**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RANDOLPH JONES,**

**Plaintiff,**

**v.**

                                      **5:11-CV-113**
                                        **(FJS/TWD)**

**ONONDAGA COUNTY RESOURCE**
**RECOVERY AGENCY and its Fifteen**
**Member Executive Board; JOSEPH**
**FONTANELLA, individually and in his official**
**capacity as OCRRA Transfer Director, as Aider**
**and Abettor; THOMAS A. RHOADS, individually**
**and in his official capacity as OCRRA Executive**
**Director, as Aider and Abettor; MAUREEN NOSIK,**
**individually and in her official capacity as OCRRA**
**Personnel Analyst, as Aider and Abettor; JEFF**
**COOPER, individually and in his official capacity as**
**OCRRA Assistant Deputy Director, as Aider and**
**Abettor; and MARK DONNELLY, individually**
**and in his official capacity as Chairman of the**
**Board and board member, as Aider and Abettor,**

**Defendants.**

_____

**APPEARANCES**                                 **OF COUNSEL**

**RANDOLPH JONES**
Syracuse, New York 13224
Plaintiff _pro se_

**HARRIS BEACH, PLLC**                         **TED H. WILLIAMS, ESQ.**
One Park Place, 4th Floor
300 South State Street
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court is Defendants' motion for summary judgment.  *See* Dkt. No. 33.  Plaintiff opposes this motion.  *See* Dkt. No. 35.

**II. BACKGROUND**

**A.      The parties**

Defendant Onondaga County Resource Recovery Agency ("Defendant OCRRA") is a public benefit corporation that the New York Legislature established to manage Onondaga County's solid waste.  *See* Dkt. No. 1 at ¶ 9; Dkt. No. 33-23 at 8.[1]  Defendant OCRRA operates two transfer stations, the Ley Creek Transfer Station ("Ley Creek") and the Rock Cut Road Transfer Station ("Rock Cut").  *See* Dkt. No. 33-24 at ¶ 14; Dkt. No. 35 at ¶ 14.  A fifteen member Board of Directors ("Board"), of which Defendant Donnelly is the Chair, oversees Defendant OCRRA.  *See* Dkt. No. 1 at ¶ 9; Dkt. No. 33-24 at ¶ 11.

Defendant Rhoads is Defendant OCRRA's former Executive Director.  *See* Dkt. No. 33-24 at ¶ 7; Dkt. No. 35 at ¶ 7.  Defendant Fontanella serves as Defendant OCRRA's Transfer Director, and he is responsible for the management of operations at Ley Creek and Rock Cut. *See* Dkt. No. 33-9 at ¶ 1; Dkt. No. 33-24 at ¶ 8; Dkt. No. 35 at ¶ 8.  Defendant Nosik is a Personnel Analyst; and she, among other things, fields employees' complaints about workplace discrimination, retaliation, and harassment.  *See* Dkt. No. 33-24 at ¶¶ 9, 12; Dkt. No. 35 at ¶¶ 9,

---

[1] For ease of reference, the Court's citations to specific page numbers reference the page numbers that the Court's electronic filing system automatically generates.

12.  Finally, Defendant Cooper is the Assistant Director of Transfer Operations at Ley Creek and has supervisory responsibilities over the workers at that transfer station.  *See* Dkt. No. 33-24 at ¶ 10; Dkt. No. 35 at ¶ 10.

On April 13, 1987, Defendant OCRRA hired Plaintiff, an African-American, as a tractor-trailer driver.  *See* Dkt. No. 33-24 at ¶¶ 1-3; Dkt. No. 35 at ¶¶ 1-3.  In February 2010, Defendant OCRRA promoted Plaintiff to a MEO III classification position at Ley Creek.  *See* Dkt. No. 33-24 at ¶ 5; Dkt. No. 35 at ¶ 5; Dkt. No. 33-15 at 5.  Plaintiff currently works in that capacity.  *See id.*  Plaintiff also served as the steward for the International Union of Operating Engineers Local 545-C (the "Union") from July 25, 2005, to March 31, 2012.  *See* Dkt. No. 33-24 at ¶ 4; Dkt. No. 33-15 at 19; Dkt. No. 35 at ¶ 4.

**B.       Plant operator position at Ley Creek**

The plant operator primarily supervises Ley Creek's daily operations, including customer service issues, maintenance of equipment, dispatch of drivers, delegation of duties to laborers, maintenance of the physical plant, and workers' and customers' safety and security.  *See* Dkt. No. 33-24 at ¶ 17; Dkt. No. 33-9 at ¶ 7.  The permanent plant operator is a civil service position and is the highest paid position in the Union.  *See* Dkt. No. 33-24 at ¶¶ 17-18; Dkt. No. 35 at ¶¶ 17-18.  The permanent plant operator's qualifications include three years of full-time work experience in the maintenance, operation, or repair of machines in a solid waste plant and one or more years of managerial experience.  *See* Dkt. No. 33-24 at ¶ 17; Dkt. No. 35 at ¶ 17.  Leroy Sabin serves as Ley Creek's permanent plant operator.  *See* Dkt. No. 33-9 at ¶ 4.  Mr. Sabin thus has supervisory responsibilities over Ley Creek's employees, including Plaintiff.  *See* Dkt. No.

33-24 at ¶ 18; Dkt. No. 35 at ¶ 18; Dkt. No. 33-9 at ¶ 8.

## C.      Collective bargaining agreement

At all relevant times, Defendant OCRRA and the Union operated under a collective

bargaining agreement ("CBA").  Article 2 of the CBA, titled "Management Rights," provides that

Defendant OCRRA has

> the exclusive right to manage its operations, including, but not
> limited to the right to maintain the efficiency of operations
> entrusted to it; to determine the methods, means and personnel by
> which such operations are to be conducted; to take whatever
> actions may be necessary to carry out the policies and purposes of
> OCRRA . . . .
>
> Nothing in this Agreement shall limit OCRRA's management
> functions, . . ., including, the right to discipline, suspend or
> discharge for just cause; to determine the qualifications of
> employees; to observe and evaluate the employee's job
> performance and to apply disciplinary action to insure a full day's
> work . . . and to require employees to observe reasonable OCRRA
> work rules presently in effect and/or to be put into effect . . . .

*See* Dkt. No. 33-12 at 4-5.

Additionally, Article 17.1 of the CBA reads, in pertinent part, "Agency-wide seniority will apply

to layoff, rehire and bidding on jobs posted by the Agency, and when the Agency assigns or

reassigns employees to fill a scheduled vacation of more than two (2) consecutive weeks." *See*

Dkt. No. 33-24 at ¶ 6; Dkt. No. 35 at ¶ 6.

Based on Defendant OCRRA's interpretation of Articles 2 and 17.1, its practice had been

to select the employee with the greatest familiarity with Ley Creek's daily operations, not the

employee with the most seniority, to serve as the temporary plant operator, i.e., a position of less

than two weeks.  *See* Dkt. No. 33-9 at ¶ 14.  Employees, however, challenged Defendant

OCRRA's interpretation of Articles 2 and 17.1.  *See* Dkt. No. 33-9 at ¶ 22.  Indeed, in 2010,

Darren Brandt, a Caucasian tractor-trailer driver, filed a grievance challenging Defendant

OCRRA's practice of assigning employees to temporary vacancies at Ley Creek.  *See id.* at ¶ 25.

Resolving Mr. Brandt's grievance in his favor, the arbitrator held that Defendant OCRRA was

required to fill temporary vacancies of two weeks or less based on seniority.  *See id.*


**D.      Plaintiff's administrative complaint and the present lawsuit**[2]

On November 24, 2009, Plaintiff filed an administrative complaint with the New York

State Division of Human Rights ("NYSDHR"), which was cross-filed with the United States

Equal Employment Opportunity Commission ("EEOC").  In that administrative complaint,

Plaintiff alleged that Defendant OCRRA discriminatorily appointed, on multiple occasions,

employees with more seniority than him to the temporary plant operator position.  *See* Dkt. No.

33-1 at ¶ 6; Dkt. No. 33-9 at ¶ 29.  By a Determination and Order dated August 3, 2010, the

NYSDHR found no probable cause to support Plaintiff's allegations.  *See* Dkt. No. 33-24 at ¶ 29.

On November 12, 2010, the EEOC adopted the NYSDHR's no probable cause finding and issued

Plaintiff a right-to-sue letter.  *See id.* at ¶ 30.

On February 1, 2011, Plaintiff filed his *pro se* complaint in this action, asserting eight

---

[2] This is Plaintiff's second lawsuit against Defendant OCRRA and most of the individual
Defendants.  *See Jones v. OCRRA*, 5:08-CV-1045, 2011 U.S. Dist. LEXIS 35292 (N.D.N.Y.
Mar. 31, 2011) ("*Jones I*").  During the pendency of *Jones I*, Plaintiff filed the present action and
repeated many of the same factual allegations and legal claims that he had alleged in *Jones I*.

causes of action. *See generally* Dkt. No. 1.[3] In his first cause of action, Plaintiff alleged that

Defendants retaliated against him after he complained about race discrimination on January 8,

2008, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). *See id.* at ¶ 61.

Specifically, Plaintiff asserted that, throughout 2008, Defendants intentionally blocked him from

any and all temporary plant operator positions by (1) threatening to suspend and discharge

Mitchell Steward and Doug Trudeau, Caucasian employees, if they did not assume the temporary

plant operator position; (2) reinstating the Assistant Deputy Director position at Ley Creek and

reassigning Defendant Cooper to that position; and (3) transferring Ted Pease, a Caucasian crew

leader, from Rock Cut to Ley Creek. *See id.* at ¶¶ 20-23, 62-64; Dkt. No. 33-15 at 44, 50.

In his second and third causes of action, Plaintiff alleged that Defendants subjected him to

discrimination, disparate treatment, and hostile work environment in violation of Title VII. *See*

Dkt. No. 1 at ¶¶ 68-69, 75-76. To support these allegations, Plaintiff asserted that Defendants (1)

reassigned Defendant Cooper and Ted Pease, two senior Caucasian employees, to block him

from vacant temporary plant operator positions; (2) imposed training requirements on him for the

plant operator position that they did not impose on Caucasian employees; and (3) allowed senior

Caucasian employees to accrue the plant operator's pay while driving trucks. *See id.*; Dkt. No.

33-15 at 51.

In his fourth and fifth causes of action, Plaintiff alleged that Defendants violated his equal

protection rights under the Fourteenth Amendment and 42 U.S.C. §§ 1981a, 1983 by creating a

hostile work environment and discriminating against him because of his race in terms of

---

[3] At the time that Plaintiff filed his complaint in this action, the Court had not yet issued
its written decision with respect to Defendants' motion for summary judgment in *Jones I*.

promotional opportunities and compensation.  *See id.* at ¶¶ 80, 84.

In his sixth cause of action, Plaintiff alleged that Defendants subjected him to intentional discrimination, a hostile work environment, and retaliation in violation of Section 296 of the New York State Human Rights Law ("NYSHRL").  *See id.* at ¶ 90.  In support of this claim, Plaintiff maintained that Defendants reassigned Defendant Cooper and Mr. Pease to new roles, permitted Caucasian employees to accrue plant operator's pay without performing the corresponding duties of that position, and added a new staffing policy.  *See id.*

In his seventh cause of action, Plaintiff alleged that Defendants violated Section 2825 of New York Public Authorities Law because their actions constituted an ongoing pattern of discrimination and contravened Defendant OCRRA's core values.  *See id.* at ¶ 96.

Finally, in his eighth cause of action, Plaintiff alleged that Defendants conspired to deny him his constitutionally and statutorily guaranteed rights and to conceal their discriminatory and hostile work environment.  *See id.* at ¶¶ 98-105.

### III. DISCUSSION

A.      **Standards of review**

   *1. Summary judgment standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant salsifies its burden, the non-moving party "'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation

and footnote omitted).

In determining whether a genuine issue of material fact exists, "the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor." *Consol. Risk Servs., Inc. v . Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2010 U.S. Dist. LEXIS 68401, *10 (N.D.N.Y. July 9, 2010) (citation omitted). An in any other case, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts' . . . . [He] must come forth with evidence sufficient to allow a reasonable jury to find in h[is] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)) (other citations omitted); *see also Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (explaining that "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact" (citation omitted)). Thus, in the context of employment discrimination actions, an employer is entitled to summary judgment if (1) "the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred"; or (2) "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (citations omitted).

### 2. Statutes governing Plaintiff's claims of employment discrimination

As previously noted, Plaintiff alleges that Defendants discriminated, harassed and

retaliated against him because of his race in violation of Title VII, NYSHRL, and 42 U.S.C. §§ 1981(a), 1983. *See generally* Dkt. No. 1.

Title VII and NYSHRL make it unlawful for employers to discriminate against their employees because of their race with respect to their terms and conditions of employment. *See* 42 U.S.C. § 2000e-2(a)(1); N.Y. Exec. Law § 296(1).

Section 1981a provides that "[a]ll persons . . . shall have the same right in every State . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). To establish a claim under § 1981, a plaintiff must show that (1) he is a member of a minority race; (2) that the defendant intended to discriminate against him because of his race; and (3) he was subjected to discrimination concerning one or more of the activities enumerated in § 1981. *See Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) (citation omitted); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994).

Finally, § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, [or] regulation . . . of any State . . ., subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must establish, by a preponderance of the evidence, that (1) the defendant was acting under color of state law; (2) the defendant's conduct deprived the plaintiff of a federal right secured by the Constitution or federal statute; and (3) the defendant's conduct caused an injury to the plaintiff. *See O'Neil v. Bebee*, 5:09-CV-1133, 2010 U.S. Dist. LEXIS 11639, *18-*19 (N.D.N.Y. Feb. 10, 2010) (citations omitted).

With these principles in mind, the Court will address each of Plaintiff's claims.

**B.      Plaintiff's NYSHRL claims**

Under New York Executive Law § 297(9), "a litigant who files a claim with the NYSDHR cannot bring the same claim in federal court . . . ." *Walker v. Muchnick, Golieb & Golieb, P.C.*, No. 12-922-cv, 2013 U.S. App. LEXIS 13356, *2 n.1 (2d Cir. June 27, 2013) (citations omitted); *see also Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 884 (2d Cir. 1995) (confirming that, "'[o]nce a complainant elects the administrative forum by filing a complaint with the [NYSDHR], that becomes the sole avenue of relief, and subsequent judicial action on the same complaint is generally barred'" (quotation and other citation omitted)).  In such a case, "'the [c]ourt lacks subject matter jurisdiction to consider [a] NYSHRL claim[] based on the same acts raised with the [NYSDHR]." *Brown v. Research Found. of SUNY*, No. 08-CV-592, 2009 U.S. Dist. LEXIS 45971, *33 (N.D.N.Y. May 28, 2009) (citation omitted)).  The election of remedies provision, however, does not apply when the NYSDHR has dismissed the plaintiff's complaint because of administrative convenience, untimeliness, or annulment of the election of remedies.  *See Thorpe v. Piedmont Airlines, Inc.*, No. 3:12-CV-0063, 2013 U.S. Dist. LEXIS 24386, *16 (N.D.N.Y. Feb. 22, 2013) (citing N.Y. Exec. L. § 297(9)).

In this case, there is no dispute that Plaintiff elected to file a verified administrative complaint with the NYSDHR, alleging discrimination, harassment, and retaliation.  *See* Dkt. No. 33-3 at 2-3.  The NYSDHR dismissed his complaint for lack of probable cause, not for administrative convenience, untimeliness, or annulment of the election of remedies.  *See* Dkt. No. 33-4 at 2-4.  Therefore, the Court finds that § 297(9)'s election of remedies provision bars

Plaintiff from asserting the same claims that he asserted before the NYSDHR in this Court. *See Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013) (affirming the district court's "rul[ing that the plaintiff's] NYSHRL claim was barred on the basis of election of remedies"). Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's NYSHRL discrimination claims and dismisses his sixth cause of action.

## C. Plaintiff's Title VII claims

### 1. Plaintiff's Title VII claims against the individual Defendants

Since "'individuals are not subject to liability under Title VII,'" the Court grants Defendants' motion for summary judgment with respect to Plaintiff's Title VII claims insofar as he asserts those claims against the individual Defendants in their individual capacities. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quotation and other citation omitted).

In addition, because Plaintiff has named OCRRA as a defendant, the Court finds that Plaintiff's claims against the individual Defendants in their official capacities are redundant and, therefore, grants Defendants' motion for summary judgment with respect to Plaintiff's Title VII claims insofar as he asserts those claims against the individual Defendants in their official capacities. *See Santana v. City of Ithaca*, No. 5:12-cv-625, 2013 U.S. Dist. LEXIS 62072, *13 (N.D.N.Y. May 1, 2013) (stating that, "'[w]ithin the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant'" (quotation and other citation omitted)).

*2. Timeliness of Plaintiff's Title VII claims*

Before commencing an employment discrimination action in federal court, a plaintiff must file an administrative charge of discrimination within 300 days of the alleged discriminatory or retaliatory acts. *See* 42 U.S.C. § 2000e-5(e)(1). The 300-day limitations period acts "analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) (citation omitted). Consequently, courts must "'preclude[] recovery for *discrete* acts of discrimination or retaliation that occur outside the statutory time period,' even if other acts of discrimination occurred within the statutory time period." *Patterson*, 375 F.3d at 220 (quoting [*Nat'l R.R. Passenger Corp. v.*] *Morgan*, 536 U.S. [101,] 105 [(2002)]). Stated differently, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. By and large, discrete acts are "easy to identify" and include, among other things, (1) "termination, failure to promote, denial of transfer, or refusal to hire[,]" *id.* at 114; and (2) "'discriminatory transfers, job assignments and non promotions, and failure to compensate adequately,'" *Askew v. New York*, 1:09-cv-553, 2013 U.S. Dist. LEXIS 15877, *18 (N.D.N.Y. Feb. 6, 2013) (quotation and other citations omitted)).

The continuing violation doctrine, however, offers an exception to the 300-day limitations period where the alleged discriminatory act is committed under an ongoing policy of discrimination. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (citation omitted). "Absent evidence of a discriminatory *policy* or *mechanism*, such as a seniority list or employment test, 'multiple incidents of discrimination, even similar ones,' will not be deemed a continuing violation." *Askew*, 2013 U.S. Dist. LEXIS 15877, at *18 (quotation omitted)). Thus, to bring a claim within the continuing violation exception, a plaintiff must present a "'specific

discriminatory policy' . . . which amounts to more than a string of allegedly discriminatory acts committed with one motive in mind." *Sanderson v. N.Y.S. Elec. & Gas Corp.*, No. 11-CV-6096T, 2013 WL 1221930, *6 (W.D.N.Y. Mar. 25, 2013) (citation omitted); *see also Askew*, 2013 U.S. Dist. LEXIS 15877, at *18 (stating that a plaintiff cannot employ the continuing violation doctrine "to 'preserve time-barred discrete discriminatory acts'" (quotation omitted)). When faced with a continuing violation exception, district courts should be mindful that the Second Circuit disfavors the doctrine and applies it only under "the most 'compelling circumstances.'" *Petrosky v. N.Y.S. Dep't of Motor Vehicles*, 72 F. Supp. 2d 39, 48 (N.D.N.Y. 1999) (quotation and other citations omitted).

In this case, it is undisputed that any alleged acts of discrimination and retaliation that predated January 28, 2009, i.e., the expiration of the 300-day limitations period, are time-barred and cannot form the basis of independent claims. *See* Dkt. No. 33-3 at 1-5. Since the allegations in paragraphs 23-28 and 61 of the complaint, *see* Dkt. No. 1 at ¶¶ 23-28, 61, pertain to alleged discriminatory actions that took place between January 8, 2008, and January 2, 2009, the Court concludes that these allegations are time-barred.

Similarly, in support of Plaintiff's retaliation claim, he alleges that, on January 8, 2007, he complained about race discrimination with respect to promotions and compensation. *See* Dkt. No. 1 at ¶ 61. According to his complaint, Plaintiff claims that Defendants engaged in "a deliberate campaign" to ensure that he would never fill the temporary plant operator position by (1) threatening to suspend and discharge two Caucasian employees if they did not take vacant temporary plant operator positions in 2008, *see id.* at ¶ 62; (2) reinstating the Assistant Deputy Director position at Ley Creek in January 2008, and hiring Defendant Cooper for that position in

August 2008, *see id.* at ¶ 63; and (3) transferring Ted Pease from Rock Cut to Ley Creek in 2008,

*see id.* at ¶ 64. Since these alleged retaliatory actions predate January 28, 2009, the Court

concludes that Plaintiff's Title VII retaliation claim is untimely.

The Court also finds that the continuing violation doctrine does not salvage these

untimely allegations and claims. A charitable review of Plaintiff's papers reveals that he

summarily insists that Defendants continue to deny him the temporary plant operator position

because of his race. Since Plaintiff has come forward with no evidence to support his conclusory

allegations, the Court concludes that Plaintiff cannot rescue his untimely discriminatory or

retaliatory acts that occurred on or before January 28, 2009. *See Askew*, 2013 U.S. Dist. LEXIS

15877, at *21 (finding that, "[w]ith the exception of [the plaintiff's] arguments and conclusory

allegations to the contrary, there [was] simply no evidence that defendants had the requisite

policy or mechanism to warrant application of the continuing violation doctrine" (citation

omitted)). Accordingly, the Court grants Defendants' motion for summary judgment with respect

to Plaintiff's claims of discrimination and retaliation insofar as those claims are based on acts that

occurred prior to January 28, 2009.


**D.    Merits of Plaintiff's claims under Title VII, § 1981(a) and § 1983**

*1. Plaintiff's claims of discrimination*

Courts use the tripartite *McDonnell Douglas* burden-shifting framework to analyze

intentional discrimination claims under Title VII and 42 U.S.C. §§ 1981(a), 1983. *See Ruiz v.*

*Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citation omitted). The plaintiff bears the

initial burden of establishing, by a preponderance of the evidence, a *prima facie* case of

discrimination.  *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (citation omitted). In the context of a discriminatory failure to promote, a plaintiff must show that "(1) []he is a member of a protected class; (2) []he applied and was qualified for a job for which the employer was seeking applicants; (3) []he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.'" *Estate of Hamilton v. City of N.Y.*, 627 F.3d 50, 55 (2d Cir. 2010) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)).

   If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged adverse employment decision or action.  *See Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997) (citations omitted).  Once the defendant presents a legitimate, non-discriminatory reason, the burden returns to the plaintiff "to demonstrate that [the] defendant's articulated reason for its decision is in fact a pretext for discrimination[.]"  *Id.*  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citation omitted).

   In this case, although Plaintiff's evidence to support his *prima facie* case is weak at best, for purposes of this motion and because of Plaintiff's *pro se* status, the Court will assume, without deciding, that Plaintiff has met his minimal burden to demonstrate a *prima facie* case of race discrimination.  *See Levitant v. Hilt NY Waldorf LLC*, No. 10 Civ. 4667, 2012 U.S. Dist. LEXIS 15245, *13 (S.D.N.Y. Feb. 6, 2012) (finding that, "[b]ecause a plaintiff's burden in establishing a prima facie case of unlawful termination under the *McDonnell Douglas* framework

is de minimis, . . . the Court assumes without deciding that Plaintiff has established a prima facie case of age- and disability-based discriminatory discharge" (citing *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1115 (2d Cir. 1988))).

The Court also concludes that, based on the evidence in the record, Defendants have articulated a legitimate, non-discriminatory reason for not selecting Plaintiff for the temporary plant operator position, i.e., he was neither the most senior nor the most qualified candidate; and Plaintiff has failed to demonstrate, by a preponderance of the evidence, that Defendants' reason is a pretext for race discrimination.

Although Plaintiff summarily avers that Defendants discriminatorily bypassed him for the temporary plant operator position, he has not identified any individual with less seniority than he has whom Defendants selected. Even construing the facts in a light most favorable to Plaintiff, he offers nothing more than the conclusory and untimely allegation that Defendants threatened more senior employees to accept the temporary positions in order to ensure that he did not assume the position. In addition, Plaintiff does not contend, let alone demonstrate, that he was more qualified for the temporary plant operator position than the selected employees were; and, given his documented, unbecoming behavior towards his coworkers and supervisors, it would have been futile for him to do so. *See Jones I*, 2011 U.S. Dist. LEXIS 35292, at *25-*26 (finding that, "to the extent that Plaintiff now argues that Defendant OCRRA changed course in midstream and began to select employees for this position based on their seniority, Plaintiff has not shown that the employees whom Defendant OCRRA selected instead of him under this new policy had less seniority than he did").

Moreover, the Court finds that Plaintiff has not demonstrated that Defendants' decision

-16-

not to select him was a pretext for discrimination. Plaintiff suggests that, once he became qualified for the temporary plant operator position, Defendants switched the selection criteria for vacant temporary positions from merit-based to seniority-based. However, he blatantly overlooks the 2010 arbitration decision in which the arbitrator held that Article 17.1 of the CBA required Defendants to select employees for temporary vacancies based on the employees' seniority. After that decision, Defendant OCRRA had a contractual obligation to select employees for temporary vacancies, including the plant operator position, based on seniority.

In sum, the Court concludes that Plaintiff has failed to demonstrate that Defendant OCRRA's reasons for its actions were a pretext for discrimination. Accordingly the Court grants Defendants' motion for summary judgment with respect to Plaintiff's second, third, fourth and fifth causes of action.

### 2. Plaintiff's hostile work environment claims

#### a. Exhaustion of administrative remedies for purposes of Title VII

"'Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency.'" *Farren v. Shaw Envtl., Inc.*, 510 F. App'x 44, 45 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5)). "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (citations omitted). Unexhausted claims are "reasonably related" where (1) "the

conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) the plaintiff is "alleging retaliation by an employer against an employee for filing an EEOC charge"; and (3) "a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402-03 (quotation and other citations omitted).

After liberally construing Plaintiff's administrative complaint, the Court finds that Plaintiff neither mentioned a hostile work environment explicitly nor alleged any facts to suggest that he was claiming a hostile work environment. *See* Dkt. No. 33-3 at 1-5. At most, he alleged that Defendants knew that he (1) had opposed unlawful discrimination in the workplace; (2) believed that they were not following the CBA; and (3) denied him training and employment opportunities. *See id.* at 2-3. Therefore, the Court concludes that NYSDHR lacked notice that Plaintiff was alleging an unlawful hostile work environment claim and that such a claim would not have fallen within the scope of NYSDHR's investigation. *See id.* Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's Title VII hostile work environment claim on the ground that Plaintiff failed to exhaust his administrative remedies with respect to that claim.

### b. Merits of Plaintiff's hostile work environment claims under § 1981a and § 1983

To succeed on a hostile work environment claim, a plaintiff must show that his "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and creates an

abusive working environment[.]'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted).  If successful, the plaintiff must thereafter "show a basis for imputing [liability for] the objectionable conduct to the employer." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (citation omitted).

To satisfy the "severe or pervasive" standard, "[a] plaintiff must show not only that []he subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* at 102 (citation omitted).  The Supreme Court has specifically articulated that

> [c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment    an environment that a reasonable person would find hostile or abusive    is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of [his] employment, and there is no Title VII violation.

*Harris*, 510 U.S. at 21-22.

In analyzing whether a plaintiff has met his burden, "courts should 'examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quotation omitted); *see also Washington v. Cnty. of Onondaga*, No. 5:04-CV-0997, 2009 U.S. Dist. LEXIS 90086, *54 (N.D.N.Y. Sept. 29, 2009) (stating that "'[c]ourts must distinguish between merely offensive and boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions of employment'" (quotation omitted)).  In doing so, courts have repeatedly held that a "'mere utterance of an . . .

epithet which engenders offensive feelings in an employee,' . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quotation omitted). Moreover, "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (citations omitted).

After reviewing the entire record and assessing the facts in the light most favorable to Plaintiff, the Court concludes that, as a matter of law, Plaintiff has not put forth any evidence of any conduct that would rise to the level required to sustain a hostile work environment claim. Notwithstanding the undisputed fact that the Court in *Jones I* considered and rejected Plaintiff's current allegations of a hostile work environment,[4] the Court finds that, at most, Plaintiff has established an environment that involved sporadic comments that do not rise to the continuous, concerted pattern necessary to support a hostile work environment claim. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (noting that, unless an incident of harassment is sufficiently severe, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive'" (quotation omitted)); *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1103 (2d Cir. 1986) (explaining that, "[t]o establish a hostile atmosphere, . . ., plaintiffs must prove more than a few isolated incidents of racial enmity. . . . Casual comments, or accidental or sporadic conversation, will not trigger equitable relief . . ." (citations omitted)). Even with the most generous reading of Plaintiff's complaint, the Court concludes that he has

---

[4] In the sworn affidavit that Plaintiff submitted in opposition to Defendants' summary judgment motion in *Jones I*, Plaintiff attested that, on April 13, 2010, Defendant Fontanella told him that he "had 'too much bravado.'" *See* Dkt. No. 33-18 at ¶¶ 14-15. Plaintiff further attested that, on April 27, 2010, William J. Bulsiewicz, Esq. admitted to commenting that Plaintiff was "'too proud a man.'" *See id.* at ¶ 16.

failed to establish a triable issue of material fact to support his claim of a pervasive and continuous atmosphere of race discrimination.

Accordingly, based on the absence of any evidence to suggest that the circumstances of Plaintiff's work environment were so threatening or humiliating as to have adversely altered his working conditions, the Court concludes that a reasonable jury could not find that Defendants subjected Plaintiff to a hostile work environment. Therefore, the Court grants Defendants' motion for summary judgment with respect to Plaintiffs' second and third causes of action insofar as they allege hostile work environment claims.


### 3. Plaintiffs' retaliation claims under § 1981(a) and § 1983

Courts analyze retaliation claims, whether under Title VII, § 1981(a) or § 1983, pursuant to Title VII principles. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citations omitted). Thus, courts evaluate all such claims under the burden-shifting framework set forth in *McDonnell Douglas. See Patane v. Clark*, 508 F.3d 106, 115-17 (2d Cir. 2007). A plaintiff must first show a *prima facie* case of retaliation, namely that (1) he engaged in a protected activity; (2) his employer was aware of that activity; (3) the employer took a materially adverse action; and (4) a causal connection existed between the adverse action and the protected activity. *See Kelly v. Howard I Shapiro & Assocs. Consulting Eng'rs., P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quotation omitted). If the plaintiff succeeds, the burden of production shifts to the defendant to "proffer a legitimate, non-discriminatory reason for the adverse action." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94-95 (2d Cir. 2001). If the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate that the articulated legitimate,

non-discriminatory reason is pretextual. *See id.* at 95 (citation omitted).

On June 24, 2013, the Supreme Court issued a decision addressing "the proper standard of causation for Title VII retaliation claims." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2524 (2013). The Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533. In light of *Nassar*, plaintiffs can no longer defeat summary judgment by simply showing that retaliation was a motivating factor in the employer's adverse employment action. *See id.*

Based on the evidence in the record and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has not shown that there was a causal connection, let alone a but-for connection, between his protected activity and Defendant OCRRA's decision not to select him for the temporary plant operator position. Furthermore, the fact that Plaintiff concedes in his complaint that Defendant OCRRA "promoted [him] to the MEO III position" approximately three months after he filed his NYSDHR complaint fatally undercuts his retaliation claim. *See* Dkt. No. 1 at ¶ 16. Additionally, Defendant OCRRA has proffered evidence that, in accordance with the 2010 arbitration decision, it has selected employees for temporary positions based on seniority. Plaintiff has failed to counter this argument with any evidence that Defendant OCRRA selected any individual for the temporary plant operator position with less seniority than he had. Moreover, Plaintiff has not come forward with evidence sufficient to persuade a reasonable juror that Defendant OCRRA's non-discriminatory reasons were pretextual.

Accordingly, the Court grants Defendants' motion for summary judgment with respect to

Plaintiffs' retaliation claims.[5]

## E.     Plaintiff's conspiracy claim

"Employees of a single corporate entity are legally incapable of conspiring together under the intracorporate conspiracy doctrine." *Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 442 (N.D.N.Y. 2009) (citation omitted). "This doctrine applies to public entities and their employees." *Id.* (citing *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004)).

In this case, all Defendants are part of the same corporate entity, Defendant OCRRA; and, therefore, the Court concludes that the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claim. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's eighth cause of action.

## F.     Plaintiff's claim that Defendants violated § 2825 of New York Public Authorities Law

Section 2825 pertains to public officers and employees' appointments and memberships on governing bodies of state or local authorities and commissions. *See* N.Y. Pub. Auth. L. § 2825. By its very terms, § 2825 has no relevance to this matter. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's seventh cause of action.

---

[5] Had the Court not already concluded that Plaintiff's Title VII retaliation claim was time-barred, it would have failed on its merits for the same reasons as his § 1981a and § 1983 retaliation claims failed.

## IV. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: September 23, 2013
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge